Good morning, your honors. I'm Jim O'Brien. Thank you for allowing me to appear by telephone today. I have three principal points to emphasize before you today. It has to do with an inadequate review of the medical records. It also has to do with misapprehending those records so as to render an adverse credibility determination on Shalise Austin's testimony. And then there's an improper series of hypothetical questions that were posited to the vocational expert which again was an issue in misapprehending medical records. If the court has records or questions regarding the due process question I'm certainly prepared to answer it but I think that's been fully briefed. Shalise, there's dispute here of course, but Shalise suffers from a 1.04 sub A spinal disorder listed impairment or its equivalent under the step 3 sequential analysis. The error comes from the ALJ's failure to appreciate the medical records. I will point out to you at 107 and 108 of the record which is the decision that under finding of fact number two the ALJ makes the finding that the Shalise suffers from a degenerative disc disease and then later on at 107 says well there's no evidence that she suffers from a degenerative disc disease. Now there may be some confusion on the part of this ALJ. There are two different medical conditions. One is called a degenerative joint disease and the other is degenerative disc disease but they principally result in the same impact. Are you arguing 1.04 A or 1.04 C? 1.40 A. I think the issue of 1.04 C was a fully briefed as well your honor. All right go ahead. The details that are in the 1.4 A show that osteoarthritis which is also known as degenerative joint disease, degenerative disc disease and facet arthritis which is also known as osteoarthritis are all medical conditions recognized in the listing itself but when you look into the decision you see that there is at finding of fact two and finding of fact three the judge appears to make a inconsistent statement regarding Shalise's degenerative joint disease. So we think that's just evidence alone of his inability to appreciate the medical conditions that he's been asked to evaluate. Can I suggest that it would be more useful if you talked about the medical evidence and the credibility finding as it relates to the RFC? I'm sorry could you repeat that your honor? Yes it would be more useful to me if you talked about the evidence relating to the RFC rather than this question. We have a very limited time is the problem. Sure your honor I'd be happy to. The adverse credibility I think this case is controlled by Brown versus Hunter and I happen to have that available to me where this court previously ruled that an ALJ does not provide specific clear and claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. That is precisely what happened here in Brown versus Hunter this court said her the medical records were sub summarized in seven paragraphs in this particular in a paragraph in this particular case the medical records were summarized in seven paragraphs and in none of those summarizations does the ALJ tie anything that Shalise testified to to a reason for finding the residual functional capacity and that of course allowed him to find a less than fully credible testimony and not adhere to her testimony such as muscle spasms they were never brought apart of the her inability to walk on uneven land on uneven ground or at a reasonable pace even though and I understand the the regulations look for a impairment in walking which requires that both upper extremities be involved that does not say that the the discussion at 1.04 or on a meaningful evaluation of the inability to ambulate effectively is exclusively related only to excuse me exclusively related only to a two-handed or upper extremity I thought we were getting off 1.04 we're going to talk about that with that regard to 1.04 whether right yes our principal issue here your honor is Shalise has a medical condition that is equivalent to a 1.04 with all of her testimony none of which is identified as uncredible or incredible by this ALJ and I'm sorry I couldn't hear you your honor I thought suppose we just agreed with you and thought that it wasn't the evidence was not equivalent to 1.04 a or 1.04 C do you lose them no because we don't talk about what what happens if we don't agree with you on 1.04 because the and my my request then would go to the ALJ's review of Shalise's testimony and the Shalise's testimony none of this is again back to Brown versus Hunter and Shalise's testimony was not evaluated no there is no comparison in the decision for between Shalise's the residual functional capacity that was ultimately identified by this ALJ mr. Brown did mr. Brown he did talk I think earlier you said he just basically relied on him he just recounted the medical evidence but he did talk also about her her daily activities right I mean he did I don't yeah so what about none of those daily activity if I may your honor none of those daily activities actually showed how he compared them with some other evidence in other words there is no comparison about when Shalise testifies that when she went through the home she sometimes has to lean against the wall or take a break or sit down none of that none of that testimonies considered when she testified to the vacuuming or mopping floors the fact that she has to take an hour break in order to clean it what a 10 foot by 12 foot surface area that's not considered now he was free if he wanted to to find that that was not believable but he didn't actually discuss it he didn't actually use the language of Brown versus Hunter which is to say you've got to do something to tie each of your findings and link it to some testimony don't the Rollins and Birch cases say that an ALJ can consider in assessing the credibility of a claim in particularly one where the ALJ thinks that the objective medical evidence doesn't support the extent of the claim symptoms don't those cases say that you can consider the extent of the daily activities and the inconsistency with the claim disability but that puts us the answer is yes your honor but that puts this court in the position of having to speculate as to what the ALJ meant and this court will not speculate if it's not actually set forth in the decision that is made it's nice to reserve time you have a better minute thank you your honor I would reserve the rest of my time then yes mr. first good afternoon your honor Frederick Fripps here for the Commissioner I would like to specifically address appellant claim that the ALJ improperly evaluated testimony contrary to the Brown case this case is distinguishable from Brown because the ALJ provided multiple specific inconsistencies in Austin's testimony he directly addresses what she testified to then knows continual improvement through therapy and other traditional medical treatment and he does also list several objective pieces of evidence that are inconsistent with her claims of total disability as well as on 109 he specifically addresses the inconsistencies with her activities of daily living I ask one question the ALJ says two things and I've seen this in other opinions but they don't seem very system to me he says on the one hand that after careful consideration the claimants he finds that the claimants medically terminable impairments could reasonably be expected to cause the alleged symptoms then he says later that the basically her alleged symptoms are not consistent medical evidence how can both of those things be true well Austin has a back impairment it has been diagnosed by doctors it exists as one of her impairments it could reasonably cause the limitations that she has alleged however the medical evidence simply does not support the extent to which she alleges that her symptoms exist we have the activities we have the medical improvement physical therapy home exercise traditional treatment all resolved the back pain she originally felt from her initial injury so much so that she went several years without any medical treatment at all the record is void of any medical opinion she was homeless for a while anyway go ahead well even excluding the absence of medical treatment the record absence of any providers corroborating the extent of her allegations in fact it's the complete opposite of all of the opinions we have suggested she is capable of much more than her her allegations they both state agency doctors say she's more medium work which would suggest 25 pounds occasionally and excuse me 25 pounds normally and 50 even 50 pounds occasionally even immediately after her injury when she was evaluated by a disability doctor she was only found to be 2% impaired and and this was immediately she was found to be able to lift up to 60 pounds so this is inconsistent with any notion that she needs a listing that simply lacks evidence at this point but to you your questions about testimony the ALJ specifically shows how some testimony is inconsistent with multiple elements of the record and in regard to the listings the record simply does not provide the evidence to satisfy the elements listings are the highest standard the case is over if appellant needs the listing and here appellant would like to focus on specific medical evidence but easily understood portions of the listing are simply not met 104a requires that often lose motor ability and sensation but doctors have regularly reported normal gait ability to ambulate effectively she's able to care for six children she went into great detail about the fact that she children were presumably not being neglected but that she was having a lot of help from them that she rested a lot that she has a lot that she had a lie down a lot take care of children doesn't tell you a lot that she had six children a not being neglected as to how much physical energy she actually people wheelchairs take care of children that is true your honor but in this she had three children of her own and three children of her boyfriend boyfriend's children were 65 and one year old I mean it takes a significant amount of energy to care for children of that age even if she had some degree of health from children are slightly older you know she had the kids with her so that can I interrupt it seems like we've lost judge van Dyck I don't know if you saw him I don't see him anymore oh I don't either he must he must have the same computer issue I do this whole system has its limitations I don't know whoever's in charge of the IT feed in Portland can try and reconnect him yes I'm going to reach out to him right now but yeah I need him to reconnect I don't have the ability to to just connect directly to him and my problem is not something Sam can help it urges cuts on your cutting in and out I oh I'm sorry that I have to I have to sit close to the computer to be heard what I was saying was that my computer problem is not one that Sam could deal with because it is the computer just shutting down and that may be his behind looks like he's rejoining now okay good judge van Dyck can you hear us all right I'm back my old computer locked up I'm sorry I was able to hear because my clerks are are screening it so I heard what you're saying but mercifully I didn't have any questions to ask you mr. perhaps so you can continue sorry about that okay I'm do do any of your honors have any additional questions I do not I do not know well as the Commissioner notes the ALJ testimony evaluation was specific and clearly inconsistencies the ALJ's evaluation of the listings was reasonable and the Commissioner acts that you show deference to the reasonable findings and find that the decision was supported by the ALJ ask her do you seem to have put a lot of stock in the fact that she took care of children she testified in detail about how she had to stop when she was cleaning shopping and so on doesn't really say specifically about watching the children the rest of the time and she wasn't really asked if you look if you look to the record it which would suggest that she had the children so much so that there was no relief to even leave them at home to go to medical appointments I thought she said she had help doing that is that wrong I thought you said her boyfriend did it with her so looking at so looking at page record site 336 that they know and it's others just like this that the kids were at the doctor's appointments with her when she was when she was there but yes the appellant's ability to care for the children is only one of the factors that was considered and finding that her impairments were inconsistent with the record we have her ability to emulate effectively seen by multiple providers and objective evidence the lack of evidence for a significant period on the multiple opinions that suggests that she is capable of much more than alleged and ALJ's RFC is actually more restrictive than any medical opinion in the record so ALJ gave deference to her allegations that she was more limited than the objective evidence appeared to remainder of my time 28 seconds okay mr. O'Brien thank you your honor I have two responses to the commissioners position one is that this ALJ never incorporated any of the testimony that was provided by Charlize to into a question to the vocational expert we do I understand that he's free to disregard that part of the testimony that he doesn't believe but apparently it wasn't entirely rejected testimony and he never incorporated any of that evidence into any of the hypotheticals that were provided he just went to an RFC hypothetical and we think that was error by this ALJ and it is him and that is what I believe that Brown versus Hunter stands for you have to an ALJ required to tie the testimony of this alliance can you give us a specific example or two of what you're referring to and something from the claimant that the ALJ didn't reject but did not include in the RFC in the hypothetical but should have Charlize testified at hearing that she had difficulty with sleeping she testified she had ongoing muscle spasms so which incidentally were if part of that objective medical record she testified to radiculopathy radiculopathy symptoms of radiculopathy running down her left leg and buttock none of that was incorporated in any of the RFC's or any of the questions hypothetical questions and yet you I think this court is left then to speculate as to what it was the ALJ thought might have been a reason to disbeliever because it's not specifically provided for in the decision which is in my view the whole thrust behind Brown versus Hunter with that I thank the court if there are other questions please feel free to inquire thank you very much awesome versus Saul is submitted and we will take a short break and then we will come and hear the Emmer case
judges: Berzon, Collins, Vandyke